UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRONG MINH NGUYEN,<br>aka JOHN NGUYEN,<br>DIEP THI VO,<br>aka NANCY VO,<br><br>Defendants. | Case No.  15-cr-00310-RMW<br><br>**ORDER DENYING MOTION TO SUPPRESS STATEMENTS**<br><br>Re: Dkt. No. 64 |

Defendant Diep Thi Vo brings a "Motion in Limine for a Hearing to Determine Whether Statements Elicited from Her Are Admissible (*Miranda* and 403)." Defendant Vo made two statements to law enforcement: one on February 4, 2014 and a follow-up on March 10, 2014. The government's response mistakenly treats Vo's motion as only addressing the second statement. Vo, however, seeks to exclude both her statements. The court held a hearing on the admissibility of the statements on July 28, 2016. Vo offered no evidence supporting her version of the facts surrounding the making of the two statements, except for what she was able to establish on cross-examination of Postal Inspector J. Burke and IRS Special Agent T. Rhodes. The motion for a hearing on the admissibility of the statements is moot as defendant was afforded a hearing. The request to suppress the statements is denied.

### I. BACKGROUND

Defendant was interviewed on two occasions by government agents regarding her involvement in tax and mail fraud schemes that led to the charges she is currently facing. She was interviewed on February 4, 2014, by Inspector J. Burk and Special Agent Richards during the execution of a search warrant at her home. On March 10, 2014, a follow up interview was performed at Ms. Vo's home by Inspector Burke and Special Agent Rhodes. During the first interview, Postal Inspector Quan Howard, a native Vietnamese speaker, was available as a translator if needed or requested, but he was apparently not needed as the interviewing agents were satisfied that Vo was fluent in English.[1] Inspector Howard did, however, read defendant her *Miranda* rights in Vietnamese. Defendant was also read her *Miranda* rights in English. According to the report signed by the agents in connection with this interview, Vo indicated she understood her rights, waived her rights and agreed to speak to the agents. Vo signed an IS Form 1067 (*Warning and Wavier of Rights*) but was told that she was not under arrest and that she was free to leave or terminate the interview at any time. She was interviewed in English.

At the follow-up interview of March 10, 2014, Inspector Burke and Rhodes did not bring a translator as they did not believe they needed one. Vo was shown the waiver she signed at the first interview and agreed to talk with the agents further. She was again interviewed in English. She was also again told she could terminate the interview at any time.

Defendant Vo now asserts that her statements were taken in violation of *Miranda* because she was in custody when the statements were taken and the statements were not voluntary given her limited English language skills. She also asserts that the statements lack reliability. The court disagrees.

### II. ANALYSIS

#### A.   Defendant Was Not in Custody when Statements Were Made

*Miranda* requires that a person must be advised before being subjected to custodial interrogation that she has the right to remain silent, that statements made can be used against her,

---

[1] Inspector Howard is now serving a sentence for his own drug dealing.

2

15-cr-00310-RMW
ORDER DENYING MOTION TO SUPPRESS STATEMENTS

that she has the right to counsel, and that she has the right to have counsel appointed. *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render [her] 'in custody.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (internal quotation marks omitted). "[I]n custody" means "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted). It requires a determination of whether "the officers established a setting from which a reasonable person would believe that she was not free to leave." *United States v. Kim*, 292 F.3d 969, 973-74 (9th Cir. 2002) (quoting *U.S. v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir.), *modified*, 830 F.2d 127 (9th Cir. 1987) (finding interrogation "custodial" and occurring "in a police-dominated atmosphere," where police questioned defendant outdoors in a remote rural area isolated from public view and sent away an approaching co-worker)). The Ninth Circuit has identified several factors relevant to the "in custody" determination: (1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *Kim*, 292 F.3d at 974 (quoting *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)).

In *Kim*, the Ninth Circuit "conclude[d] that Kim was 'in custody' for *Miranda* purposes because a reasonable person in Kim's circumstances would not have felt free to leave." *Id.* Kim arrived at her store and saw a number of police and other official looking vehicles. *Id.* The police allowed Kim into the store, but locked the door behind her leaving her husband outside. *Id.* at 971. The police directed her to sit separately from her son and restricted her from communicating with her son, even though the police knew Kim could not understand English well. *Id.* Two officers sat with Kim during her interview. *Id.* at 972. Although the police claimed they told Kim she was free to leave, the district court specifically rejected that testimony. *Id.* at 973. The court first found that although the police did not summon Kim to her own store, neither did she submit to questioning voluntarily. *Id.* at 974. Next, the court reasoned that Kim's isolation from both her husband and

3

son neutralized the familiarity of the location as a factor. *Id.* at 977. The court noted the locked doors and restriction on Kim's movement. *Id.* The court also considered Kim's 50-minute interview "a full-fledged interrogation." *Id.* Finally, the court reasoned that the police "temporarily took over complete control of Kim's store and created 'a police-dominated atmosphere,' in which the police kept Kim physically isolated from two family members who could have provided support, and, given her limited English, a more complete understanding of the overall circumstances." *Id.*

In the present case Vo was asked at her home whether she would talk with the government agents. She was told she could terminate the interview at any time. She appeared to be proficient in English and gave particularized answers to questions. She read and freely signed the *Miranda* warning and waiver form. There is no evidence that Vo was coerced by the agents or intimidated by their holstered firearms. Although Vo was confronted with some evidence of her guilt particularly in the second interview, there is no evidence that she did not freely participate in the interviews or felt she was not free to terminate her discussion with the agents.

The defense did point out that there was no government agent present at either interview who was fluent in Vietnamese and could verify whether Inspector Howard's translation of the *Miranda* form was accurate. Howard did not testify at the hearing presumably because he is now in prison. However, the waiver form was read to Vo in English, and she read and signed the form and appeared to understand English.

Under the circumstances existing at the time of the interviews, the court concludes that Vo was not in custody.

**B.    Defendant Waived Her *Miranda* Rights and Voluntarily Spoke with Government Agents**

As discussed above, the evidence supports the conclusion that Vo freely and voluntarily signed the Warning and Wavier of Rights form. Therefore, even if she were in custody at the time that she was interviewed, she waived her *Miranda* rights and voluntarily spoke with the agents.

**C.    The Statements Are Sufficiently Reliable to Be Admissible**

The defense contends that the statements are not admissible because Vo may not have

4

understood the questions being asked when she provided her answers, and she may not have been able to effectively communicate her actual thoughts into the English language. This argument is mere speculation and inconsistent with the record. Vo's responses to the agents and the detail provided by her responses belie a lack of understanding or an inability to express herself in English. Assuming that her statements are admitted, the jury will decide what statements defendant made and how much weight to give those statements. *See* Ninth Circuit Model Instructions 4.1.

### D. The Probative Value of the Statements Is Not Outweighed by Unfair Prejudice

The defense mentions but does not amplify on its contention that the two interviews should be excluded because their prejudicial effect substantially outweighs their probative value. *See* FRE 403. Defendant apparently contends that this is the case because the statements are unreliable. The court disagrees and finds the evidence admissible.

## III. ORDER DENYING MOTION TO SUPPRESS

For the reasons stated above, it is hereby ordered that Vo's two statements made to the agents are not suppressed.

**IT IS SO ORDERED.**

Dated: August 19, 2016

_____
Ronald M. Whyte
United States District Judge